THE HONORABLE JOHN H. CHUN

**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF WASHINGTON**
**AT SEATTLE**

| | |
|---|---|
| PETER DIRKSEN, AVIVA COPAKEN, and STEVEN BELTRAN, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>FUNKO, LLC,<br><br>Defendant. | Case No. 2:26-cv-01585-JHC<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANT FUNKO LLC'S MOTION TO DISMISS**<br><br>NOTE ON MOTION CALENDAR:<br>September 14, 2026 |



TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

## TABLE OF CONTENTS


I. INTRODUCTION ..... 1
II. BACKGROUND ..... 2
III. LEGAL STANDARD ..... 3
IV. ARGUMENT ..... 4
A. Plaintiffs Have Suffered a Concrete Injury, Establishing Article III Standing ..... 4
B. Plaintiffs' California Statutory Claims May Advance ..... 6
C. Plaintiffs Sufficiently Plead Their Constitutional And Common Law Invasion of Privacy Claims ..... 7
1. Plaintiffs Have a Reasonable Expectation of Privacy in Their Sensitive Information ..... 7
2. Defendant's Intrusion Was Highly Offensive ..... 8
D. Plaintiffs Sufficiently Plead Their Wiretap Claims ..... 9
1. Plaintiffs Plead an Unlawful Interception; The Crime Tort Exception Applies ..... 10
2. Plaintiffs Allege "In Transit" Interception ..... 11
3. There Can Be Civil Liability for Allegedly Procuring or Aiding and Abetting an Alleged Interception Through Third Parties ..... 13
4. Plaintiffs Plead Interception of Contents ..... 14
E. Plaintiffs Adequately Plead A Claim Under CIPA § 638.51 ..... 15
F. Plaintiffs Have Stated A Claim For Common Law Fraud ..... 15
G. Plaintiffs Have Stated Claims Under the UCL and CLRA ..... 16
1. UCL ..... 17
2. CLRA ..... 18
H. Plaintiffs Adequately Plead Unjust Enrichment ..... 18
V. CONCLUSION ..... 19




TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

# TABLE OF AUTHORITIES

## Cases

*Alexander v. Sanford*,
181 Wn. App. 135 (Wash. App. 2014) .......... 16

*Allison v. PHH Mortg.*,
No. 25-CV-05323-RFL, 2026 WL 899438 (N.D. Cal. Mar. 27, 2026) .......... 11

*Armijo v. Yakima HMA, LLC*,
No. 11-CV-3114-TOR, 2012 WL 2576624 (E.D. Wash. July 3, 2012) .......... 7

*Asercion v. Ulta Salon, Cosmetics & Fragrance, Inc.*,
No. 26-CV-02442-RFL, 2026 WL 2453175 (N.D. Cal. Aug. 21, 2026) .......... 11, 12, 14

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .......... 3

*B.K. v. Desert Care Network*,
No. 2:23-cv-05021 SPG (PDx), 2024 WL 1343305 (C.D. Cal. Feb. 1, 2024) .......... 18

*Balestrieri v. SportsEdTV, Inc.*,
No. 25-cv-04046-SK, 2025 WL 2776356 (N.D. Cal. Sept. 16, 2025) .......... 13

*Boseovski v. McCloud Healthcare Clinic, Inc.*,
No. 2:16-CV-2491-DMC, 2020 WL 68578 (E.D. Cal. Jan. 7, 2020) .......... 13

*Bower v. AT&T Mobility, LLC*,
196 Cal. App. 4th 1545 (Cal. App. 2011) .......... 16

*Brown v. Google LLC*,
685 F. Supp. 3d 909 (N.D. Cal. 2023) .......... 8

*Cappello v. Walmart Inc.*,
394 F. Supp. 3d 1015 (N.D. Cal. 2019) .......... 17

*Castillo v. Costco Wholesale Corp.*,
No. 2:23-CV-01548-JHC, 2024 WL 4785136 (W.D. Wash. Nov. 14, 2024) .......... 6, 7, 19

*Correia v. Lulu & Georgia, Inc.*,
No. 3:26-CV-01186-GPC-JLB, 2026 WL 2343093 (S.D. Cal. Aug. 12, 2026) .......... 4, 5, 7

*D'Angelo v. FCA US, LLC*,
726 F. Supp. 3d 1179 (S.D. Cal. 2024) .......... 8

*D'Angelo v. Penny Opco, LLC*,
No. 23-CV-0981-BAS-DDL, 2023 WL 7006793 (S.D. Cal. Oct. 24, 2023) .......... 12



TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

*D'Antonio v. Smith & Wesson Inc.*,
820 F. Supp. 3d 928 (N.D. Cal. 2026) .................... 9

*Daly v. Amazon.com, Inc.*,
718 F. Supp. 3d 1378 (W.D. Wash. 2024).................... 7

*Dawson v. Univ. of Phx., Inc.*,
No. 1:25-cv-03497, 2026 WL 92248 (N.D. Ill. Jan. 13, 2026).................... 13

*Dellasala v. Samba TV, Inc.*,
No. 3:25-CV-03470-JSC, 2026 WL 1138358 (N.D. Cal. Apr. 21, 2026) .................... 5, 11

*Diaz et al. v. Paramount Skydance Corp.*,
No. EDCV 25-02945-KK-DTBx, 2026 WL 1090958 (C.D. Cal. Apr. 20, 2026).................... 5

*Doe 1 v. AOL, LLC*,
719 F. Supp. 2d 1102 (N.D. Cal. 2010) .................... 18

*Doe v. Eating Recovery Ctr. LLC*,
No. 23-CV-05561-VC, 2024 WL 2852210 (N.D. Cal. June 4, 2024) .................... 18

*Doe v. Kaiser Found. Health Plan, Inc.*,
No. 23-CV-02865-EMC, 2024 WL 1589982 (N.D. Cal. Apr. 11, 2024) .................... 6

*Doe v. Tenet Healthcare Corp.*,
*789 F. Supp. 3d 814 (E.D. Cal. 2025)* .................... 14

*Edwards v. Mubi, Inc.*,
773 F. Supp. 3d 868 (N.D. Cal. 2025) .................... 17

*Gabrielli v. Haleon US Inc.*,
815 F. Supp. 3d 852 (N.D. Cal. 2025) .................... 4, 9, 14, 15, 16, 19

*Garcia v. Anschutz Ent. Grp., Inc.*,
No. 5:25-CV-02282-SSS-DTBx, 2026 WL 1278912 (C.D. Cal. May 5, 2026).................... 4

*Garcia v. Blackhawk Network, Inc.,*
No. 2:25-cv-07550-JLS-SSC, 2026 WL 925028 (C.D. Cal. Apr. 1, 2026) .................... 5

*Garcia v. Truist Fin. Corp.*,
825 F. Supp. 3d 1149(C.D. Cal. 2026) .................... 11

*Garner v. Amazon.com, Inc.*,
603 F. Supp. 3d 985 (W.D. Wash. 2022).................... 6

*Garner v. Amazon.com, Inc.*,
828 F. Supp. 3d 1109 (W.D. Wash. 2026).................... 7



TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

*Gilligan v. Experian Data Corp.*,
No. 25-CV-02873-RFL, 2026 WL 32259 (N.D. Cal. Jan. 6, 2026) .......... 8

*Greenley v. Kochava, Inc.*,
684 F. Supp. 3d 1024 (S.D. Cal. 2023).......... 8, 15

*Hammerling v. Google LLC*,
615 F. Supp. 3d 1069 (N.D. Cal. 2022) .......... 9

*Harris v. iHeartMedia, Inc.*,
No. 25-CV-06038-EKL, 2026 WL 247875 (N.D. Cal. Jan. 29, 2026).......... 6

*Heerde v. Learfield Commc'ns, LLC*,
741 F. Supp. 3d 849 (C.D. Cal. 2024) .......... 12

*In re Blue Shield of California Privacy Litig.*,
No. 4:25-cv-03209-YGR, 2026 WL 2040561 *(N.D. Cal. July 10, 2026)* .......... 13

*In re Facebook, Inc. Internet Tracking Litig.*,
956 F.3d 589 (9th Cir. 2020) .......... 4, 7, 9, 14, 19

*In re iPhone Application Litig.*,
844 F. Supp. 2d 1040 (N.D. Cal. 2012) .......... 9

*In re Meta Pixel Healthcare Litig.*,
647 F. Supp. 3d 778 (N.D. Cal. 2022) .......... 8

*In re Meta Pixel Tax Filing Cases*,
724 F. Supp. 3d 987 (N.D. Cal. 2024) .......... 17

*In Re Otter.AI Privacy Litigation,*
No. 25-cv-06911-EKL, 2026 WL 2351237 (N.D. Cal. Aug. 13, 2026) .......... 11

*In re TikTok, Inc., Minor Priv. Litig.,*
No. MDL 3144-GW-RAOX, 2025 WL 3628448 (C.D. Cal. Nov. 6, 2025) .......... 17

*In re TikTok, Inc., Minor Priv. Litig.,*
No. MDL 3144-GW-RAOX, 2025 WL 3628598 (C.D. Cal. Nov. 5, 2025) .......... 17

*In re USA Today Co., Inc. Internet Tracking Litig.*,
No. 24-cv-05150-MMC, 2026 WL 932655 (N.D. Cal. Apr. 6, 2026).......... 5

*In re Zoom Video Communs. Inc. Privacy Litig.*,
525 F. Supp. 3d 1017 (N.D. Cal. 2021) .......... 17

*In re Zynga Privacy Litig.*,
750 F.3d 1098 (9th Cir. 2014) .......... 8



TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

*Krzyzek v. Openx Techs., Inc.*,
817 F. Supp. 3d 857 (N.D. Cal. 2026) .......... 14

*Li v. Amazon.com Servs., LLC*,
751 F. Supp. 3d 1138 (W.D. Wash. 2024) .......... 7

*Limas v. Wayfair LLC, et al.*,
No. CV 25-11185-DMG (Ex), 2026 WL 2351592 (C.D. Cal. Aug. 13, 2026) .......... 12, 14, 15

*Lonegan v. Hasty*,
436 F. Supp. 2d 419 (E.D.N.Y. 2006) .......... 13

*Lujan v. Defenders of Wildlife*,
504 U.S. 555 (1992) .......... 3

*Mekhail v. N. Mem'l Health Care*,
726 F. Supp. 3d 916 (D. Minn. 2024) .......... 10

*Mikulsky v. Bloomingdale's, LLC*,
713 F. Supp. 3d 833 (S.D. Cal. 2024) .......... 14

*Mintz v. Mark Bartelstein & Assocs.*,
906 F. Supp. 2d 1017 (C.D. Cal. 2012) .......... 12

*Moore v. Kayport Package Express*,
*885 F.2d 531 (9th Cir. 1989)* .......... 4

*Nienaber v. Overlake Hosp. Med. Ctr.*,
733 F. Supp. 3d 1072 (W.D. Wash. 2024) .......... 8

*NovelPoster v. Javitch Canfield Group*,
140 F. Supp. 3d 938 (N.D. Cal. 2014) .......... 12

*Oh v. Catalina Snacks, Inc.*,
764 F. Supp. 3d 903 (C.D. Cal. 2025) .......... 18

*Patel v. Facebook*,
932 F.3d 1264 (9th Cir. 2019) .......... 4

*Peavy v. WFAA-TV, Inc.*,
*221 F.3d 158 (5th Cir. 2000)* .......... 13

*Pemberton v. Rest. Brands Int'l, Inc.*,
No. 25-CV-03647-JSC, 2025 WL 3268404 (N.D. Cal. Nov. 24, 2025) .......... 4, 16, 19

*Popa v. Microsoft Corp.*,
153 F.4th 784 (9th Cir. 2025) .......... 5



TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

*Q.J. v. Powerschool Holdings, LLC*,
No. 23 C 5689, 2025 WL 2410472 (N.D. Ill. Aug. 20, 2025) .......... 10

*R.C. v. Walgreen Co.*,
733 F. Supp. 3d 876 (C.D. Cal. 2024) .......... 11

*Roney v. Miller*,
705 F. Appx. 670 (9th Cir. 2017) .......... 19

*Shah v. MyFitnessPal, Inc.*,
No. 25-CV-04430-PCP, 2026 WL 216334 (N.D. Cal. Jan. 27, 2026) .......... 8

*Smart v. Main Line Health*,
No. 22-5239, 2026 WL 1008171 (E.D. Pa. Apr. 14, 2026) .......... 11

*Smith v. Rack Room Shoes, Inc.*,
No. 24-cv-06709-RFL, 2025 WL 2210002 *(N.D. Cal. Aug. 4, 2025)* .......... 13

*Stark v. Patreon, Inc.*,
635 F. Supp. 3d 841 (N.D. Cal. 2022) .......... 16

*Thornton v. Micro-Star Int'l Co.*,
No. 2:17-cv-03231-CAS-AFMx, 2018 WL 5291925 (C.D. Cal. Oct. 23, 2018) .......... 16, 18

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021) .......... 3

*Valentine v. Wideopen West Fin., LLC,*
288 F.R.D. 407 (N.D. Ill. 2012) .......... 13

*Vess v. Ciba-Geigy Corp. USA*,
317 F.3d 1097 (9th Cir. 2003) .......... 3, 16

*Vishal Shah v. Fandom, Inc.*,
754 F. Supp. 3d 924 (N.D. Cal. 2024) .......... 15

*Vishal Shah v. Politico LLC,*
No. 25-cv-05213-NW, 2026 WL 323269 (N.D. Cal. Feb. 6, 2026) .......... 4

*Viveros v. Audible, Inc.*,
No. C23-0925JLR, 2023 WL 6960281 (W.D. Wash. Oct. 20, 2023) .......... 7

*Young v. Young*,
164 Wn.2d 477 (2008) .......... 18

**Statutes**



TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

Cal. Bus. & Prof. Code § 17200 .......... 16

Cal. Civ. Code § 1770 .......... 16

Cal. Penal Code § 631(a) .......... 10

CIPA § 631 .......... 9

CIPA § 631(a) .......... 11, 13

CIPA § 638.51 .......... 15

Federal Wiretap Act § 2511 .......... 10

**Rules**

Fed. R. Civ. P. 9(b) .......... 4



TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

Plaintiffs Peter Dirksen, Aviva Copaken, and Steven Beltran ("Plaintiffs") respectfully submit this response in opposition to Defendant Funko LLC's ("Funko" or "Defendant") Motion to Dismiss (ECF No. 14) (the "Motion") to Plaintiffs' class action complaint (the "Complaint") (ECF No. 1).

## I. INTRODUCTION

Funko claims this case is about "criminaliz[ing] everyday digital business tools." Mot. at 1. The Complaint alleges something different: that Funko designed a website featuring a cookie banner and preferences interface telling visitors they could refuse tracking and prevent the sale or sharing of their personal data. These assurances were false. Funko's tracking software began transmitting visitors' communications to third parties before the banner could even be read and continued transmitting that data even after visitors affirmatively rejected consent.

Funko's framing, that these tracking tools merely "analyze performance and deliver useful content" (*id.*), elides who actually receives Plaintiffs' data and what they do with it. The third parties here, including Meta and Google, represent some of the most powerful and sophisticated technology, advertising, and social media companies in the world. These third parties receive Plaintiffs' communications on the Website and leverage those communications to create comprehensive user profiles for their own purposes. Funko shares these communications with these third parties despite its promise not to.

Funko argues, *inter alia*, that Plaintiffs lack standing, that Plaintiffs have failed to plead a highly offensive intrusion and a reasonable expectation of privacy, and that Plaintiffs' Wiretap claim fails for particularity of pleading. In each respect, Funko's arguments are unavailing; indeed, they run contrary to a host of recent decisions assessing similar conduct and refusing to dismiss identical claims. Accordingly, the Motion should be denied.



TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

## II. BACKGROUND

Funko operates www.funko.com, a direct-to-consumer platform where visitors browse and purchase Funko's pop-culture, collectible products (the "Website"). Compl. ¶[1] 3. When a visitor arrives, the Website displays a pop-up cookie banner representing that Plaintiffs could disable every cookie not necessary for the Website to function. *Id.* at *Fig. 1*.

Funko voluntarily embedded software (the "Tracking Tools") from third-party "Tracking Entities"—including Facebook (Meta), Google, and Salesforce—into the Website's code pursuant to commercial agreements with those entities. ¶¶ 66, 74, 95, 107. Funko controls the Website's code, determines which Tracking Tools load, decides whether cookies are placed on visitors' devices and whether visitor data is transmitted, and specifies how much data the Tracking Entities collect and in what detail. ¶¶ 117, 131. As configured by Funko, the Website deployed the Tracking Tools the moment visitors landed on the Website, and before they had any opportunity to read or act on the cookie banner. ¶¶ 5, 9.

The Tracking Tools capture users' communications with the Website as they happen. Operating inside the visitor's browser, they duplicate and transmit both incoming and outgoing requests contemporaneously, before the communications reach their intended destination. ¶¶ 59, 66, 91, 105, 113-14. What they capture is not limited to routing data. Instead, the Tracking Tools record visitors' selections of links, buttons, forms, and other on-page elements; information entered into search fields; the webpages and products viewed or purchased; inferred interests, preferences, age, and location; device and technical identifiers; persistent identifiers that recognize visitors across sessions and websites; email addresses; and approximate geolocation (collectively, "Sensitive Information"). ¶ 6. The intercepted network requests included Request URLs identifying the specific webpages visitors viewed. ¶¶ 28-30, 59-61.

The Tracking Entities collect and use the intercepted communications for their own commercial purposes as well as for Funko's benefit. ¶¶ 67-70,75, 76, 94. Each Entity correlates

[1] For this section, "¶" refers to the Complaint.



TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

intercepted Website activity with data it already holds to compile cross-site profiles of visitors' behaviors, demographics, and inferred characteristics. ¶¶ 69, 94, 106. 108.

Plaintiffs Dirksen, Copaken, and Beltran are all California citizens who visited the Website in or about March 2026, April 2025, and March 2026, respectively, while physically located in California. ¶¶ 19-21. Plaintiff Beltran purchased products on the Website and created an account on the Website. ¶ 21.

Plaintiffs expressly declined the Website's cookie banner. ¶¶ 19-21. Despite that election, and without their knowledge or informed consent, the Tracking Tools continued to capture, duplicate, and transmit their communications with the Website, and the Tracking Entities intercepted, collected, and used their Sensitive Information. ¶¶ 19-21, 130, 131. All Plaintiffs relied on Funko's representations and believed the Website would honor the choices they made through the cookie banner. ¶¶ 19-21.

## III. LEGAL STANDARD

To establish Article III standing, "a plaintiff must show (i) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). Examples of concrete but intangible harms include "reputational harms, disclosure of private information, and intrusion upon seclusion." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 425 (2021).

To survive a 12(b)(6) challenge, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face." *Nicholas v. Amazon.com, Inc.*, 740 F. Supp. 3d 1099, 1102 (W.D. Wash. 2024) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

Rule 9(b)'s particularity requirement applies only to averments of fraud; claims that do not sound in fraud remain governed by Rule 8's ordinary notice-pleading standard. *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103–05 (9th Cir. 2003). By the Rule's own terms, however,



TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

"[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). And the particularity requirement may be relaxed as to matters peculiarly within the defendant's knowledge. *Moore v. Kayport Package Express*, 885 F.2d 531, 540 (9th Cir. 1989).

## IV. ARGUMENT

### A. Plaintiffs Have Suffered a Concrete Injury, Establishing Article III Standing

The "right to privacy encompass[es] [an] individual's control of information concerning his or her person." *Patel v. Facebook*, 932 F.3d 1264, 1273 (9th Cir. 2019). It logically follows that the unauthorized tracking and disclosure of Plaintiffs' Sensitive Information satisfy Article III's concreteness requirement. *See In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 599 (9th Cir. 2020) (standing satisfied where "Facebook's tracking and collection practices would cause harm or a material risk of harm to their interest in controlling their personal information"); *see also Garcia v. Anschutz Ent. Grp., Inc.*, No. 5:25-CV-02282-SSS-DTBx, 2026 WL 1278912, at *3 (C.D. Cal. May 5, 2026) (similar). The injury resulting from the inability to control one's personal information is more pronounced; Defendant ignored Plaintiffs' express rejection of cookies and engaged in the very tracking and disclosure it represents does not occur. *See Correia v. Lulu & Georgia, Inc.*, No. 3:26-CV-01186-GPC-JLB, 2026 WL 2343093, at *4 (S.D. Cal. Aug. 12, 2026) (finding Article III standing where defendant "affirmatively informed users they could decline or opt out of that form of information collection" and "collected that information anyway"); *Pemberton v. Rest. Brands Int'l, Inc.*, No. 25-CV-03647-JSC, 2025 WL 3268404, at *3 (N.D. Cal. Nov. 24, 2025) (similar, and holding defendant's misrepresentation concerning its cookie settings deprived plaintiff of control of his personal information regarding his online activity); *Gabrielli v. Haleon US Inc.*, 815 F. Supp. 3d 852, 865–67 (N.D. Cal. 2025) (similar); *Vishal Shah v. Politico LLC,* No. 25-cv-05213-NW, 2026 WL 323269, at *4 (N.D. Cal. Feb. 6, 2026) (similar). This applies even where "the browsing data at issue may not involve the types of



TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

information in which users have an unqualified expectation of privacy." *See Correia,* 2026 WL 2343093, at *4.

Here, Plaintiffs' allegations align with those in the above authorities. Plaintiffs allege Defendant permitted the Tracking Entities and their Tracking Tools to place tracking and identifying cookies on their devices. Compl. ¶¶ 5,6, 41-48. These Tracking Tools intercepted and shared Plaintiffs' Sensitive Information, including their interactions and communications on the Website linked to personal and persistent identifiers, in direct contradiction to Defendant's representations in its cookie settings that it would prohibit such sharing. *Id*. at ¶¶ 7-10, 12, 19-21, 57, 58.

*Popa v. Microsoft Corp.*, 153 F.4th 784 (9th Cir. 2025), as put forth by Defendant, does not control here. For starters, the defendant in *Popa* did not misrepresent its data-sharing practices through its cookie settings. *See Correia*, 2026 WL 2343093, at *4 (holding that the deceptive cookie settings distinguish themselves from *Popa* and create "a reasonable expectation of privacy with respect to that information").[2] Further, the degree and extent of tracking here exceeds that in *Popa*: Plaintiffs' Sensitive Information was used to create comprehensive user profiles comprised not just of data obtained from Defendant's Website, but of data collected from Plaintiffs' browsing and interactions on other websites. Defendant and the Tracking Entities then used these comprehensive profiles for monetary gain.[3] *See* Compl. ¶¶ 75, 82, 83, 104, 132, 242; *see also Dellasala v. Samba TV, Inc.*, No. 3:25-CV-03470-JSC, 2026 WL 1138358, at *3 (N.D. Cal. Apr. 21, 2026) ("*Popa* is further distinguishable because it did not involve any dissemination of the 'session-replay' beyond the defendants' own use."); *see also Harris v. iHeartMedia, Inc.*,

---

[2] Most of Defendant's remaining authorities are distinguishable for this reason. *See Diaz et al. v. Paramount Skydance Corp.*, No. EDCV 25-02945-KK-DTBx, 2026 WL 1090958 (C.D. Cal. Apr. 20, 2026) (no cookies setting misrepresentation); *In re USA Today Co., Inc. Internet Tracking Litig.*, No. 24-cv-05150-MMC, 2026 WL 932655 (N.D. Cal. Apr. 6, 2026) (same).

[3] Defendant's remaining authorities are distinguishable for this reason. *See Garcia v. Blackhawk Network, Inc.,* No. 2:25-cv-07550-JLS-SSC, 2026 WL 925028 (C.D. Cal. Apr. 1, 2026) (no standing because the Plaintiff had provided few details on the scope of the tracking).



TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

No. 25-CV-06038-EKL, 2026 WL 247875, at *1 (N.D. Cal. Jan. 29, 2026) (finding Article III standing where "[u]sing IP addresses, device metadata, and unique identifiers, the third parties allegedly track users 'across the internet' and 'build[ ] comprehensive user profiles that include an assortment of information, interests, and inferences.'").[4] Accordingly, Plaintiffs have suffered a concrete injury to establish Article III standing.[5]

**B. Plaintiffs' California Statutory Claims May Advance**

This very Court has held that California, not Washington, has the most significant relationship to Plaintiffs' California wiretap claims.[6] *See Castillo v. Costco Wholesale Corp.*, No. 2:23-CV-01548-JHC, 2024 WL 4785136, at *3 (W.D. Wash. Nov. 14, 2024) (J. Chun) ("[b]ecause wiretapping statutes are designed to protect the privacy interests of individual members, the ***residences of the individuals are more important*** to the respective sovereign than the residence of the alleged wrongdoer") (emphasis added); *see also Doe v. Kaiser Found. Health Plan, Inc.*, No. 23-CV-02865-EMC, 2024 WL 1589982, at *13 (N.D. Cal. Apr. 11, 2024) (similar).

In arguing that under the "most significant relationship" test the WPA, not CIPA, governs here, Defendant selectively relies on an earlier decision in *Garner v. Amazon.com, Inc.*, from 2022. 603 F. Supp. 3d 985 (W.D. Wash. 2022). However, the 2026 summary judgment decision in that same case clarified the court's position, holding that "the place where the surreptitious recording and resulting injury occurred is most significant in the absence of any sort of contractual relationship," and that "the interests and policies of the jurisdiction where the injured parties are domiciled should govern." *Garner v. Amazon.com, Inc.*, 828 F. Supp. 3d 1109, 1119 (W.D. Wash.

[4] Defendant's assertion that Plaintiffs "do not allege facts demonstrating what sensitive information was actually collected from them beyond vague identifiers" (Mot. at 14) is inaccurate. *See* Compl. ¶¶ 86-90 (the FID can personally identify a user to Meta or any ordinary person).
[5] Defendant's ancillary argument that Plaintiffs cannot show that their information "suffered a diminution in value" (Mot. at 14) is inconsequential to Plaintiffs' Article III standing argument.
[6] Plaintiffs agree a conflict exists between CIPA and the Washington Privacy Act ("WPA"), and therefore the "most significant relationship" test as set forth in the Restatement (Second) of Conflict of Laws ("Restatement") § 145 (1971), applies.



TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

2026). The *Castillo* Court likewise departed from the 2022 *Garner* decision, holding that "dismissing claims brought under the CIPA and FSCA based on statutory gaps unique to the WPA would not protect California and Florida's privacy interests under their wiretap statutes."[7] 2024 WL 4785136, at *3.

Plaintiffs' CLRA and UCL claims may also proceed. *See Li v. Amazon.com Servs., LLC*, 751 F. Supp. 3d 1138, 1148 (W.D. Wash. 2024) (permitting California plaintiffs to plead claims under the CLRA and UCL); *Daly v. Amazon.com, Inc.*, 718 F. Supp. 3d 1378, 1386 (W.D. Wash. 2024) (same); *Viveros v. Audible, Inc.*, No. C23-0925JLR, 2023 WL 6960281, at *11 (W.D. Wash. Oct. 20, 2023) (same). Accordingly, Plaintiffs may pursue all their California statutory claims.

### C. Plaintiffs Sufficiently Plead Their Constitutional And Common Law Invasion of Privacy Claims

Claims of invasion of privacy under the California Constitution and intrusion upon seclusion under Washington common law both require a reasonable expectation of privacy and conduct that is "highly offensive." *See Armijo v. Yakima HMA, LLC*, No. 11-CV-3114-TOR, 2012 WL 2576624, at *2 (E.D. Wash. July 3, 2012) (the intrusion must be "in a manner that would be highly offensive to a reasonable person"); *see also In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d at 601(same). Plaintiffs satisfy all requirements.

#### 1. Plaintiffs Have a Reasonable Expectation of Privacy in Their Sensitive Information

Defendant created a reasonable expectation of privacy as to Plaintiffs' Sensitive Information by representing to Plaintiffs that they could control what information was shared with the Tracking Entities. *See Correia*, 2026 WL 2343093, at *4 ("inform[ing] users they could decline or opt out of that form of information" creates a "reasonable expectation of privacy with

[7] Funko has moved to compel arbitration only as to Plaintiff Beltran (*see* ECF No. 12), but has put forth no evidence that Plaintiffs Dirksen and Copaken are bound by any choice-of-law provision.



TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

respect to that information”); *see also Shah v. MyFitnessPal, Inc.*, No. 25-CV-04430-PCP, 2026 WL 216334, at *4 (N.D. Cal. Jan. 27, 2026) (similar).

Defendant’s authority to the contrary is unavailing. Notably, neither *In re Zynga Privacy Litig.*, 750 F.3d 1098 (9th Cir. 2014), *D’Angelo v. FCA US, LLC*, 726 F. Supp. 3d 1179 (S.D. Cal. 2024), nor *Nienaber v. Overlake Hosp. Med. Ctr.*, 733 F. Supp. 3d 1072 (W.D. Wash. 2024), involved a defendant who created an expectation of privacy by representing to users, via its cookie settings, that they could control the defendant’s data-sharing practices and then did the opposite.

Moreover, Defendant’s reliance on *Zynga* for the proposition that there is no protected privacy interest in basic identification information or descriptive URLs is misplaced. *See Brown v. Google LLC*, 685 F. Supp. 3d 909, 941 (N.D. Cal. 2023) (“[A]lthough Ninth Circuit law indicates that users may not have a reasonable expectation of privacy over the IP addresses of the websites they visit or URLs that only reveal basic identification information, they do [have such an expectation] over URLs that disclose either unique ‘search terms’ or the ‘particular document within a website that a person views.’”); *see also In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d 778, 800 (N.D. Cal. 2022) (“[I]ndividuals maintain a reasonable expectation of privacy in detailed URLs.” Plaintiffs’ allegations are in harmony with these decisions. *See* ¶¶ Compl. 6, 19-21, 66, 74, 91 (the Tracking Tools intercepted search terms and detailed URLs). Therefore, Plaintiffs have established that they have an expectation of privacy in their Sensitive Information.

**2. Defendant’s Intrusion Was Highly Offensive**

Courts agree that invasion into information of the type and breadth alleged here gives rise to a highly offensive intrusion. *See Gilligan v. Experian Data Corp.*, No. 25-CV-02873-RFL, 2026 WL 32259, at *2 (N.D. Cal. Jan. 6, 2026) (the unauthorized, widespread tracking and data collection used to compile detailed profiles of each plaintiff’s online browsing activity tied to their personal identifiers, allowing defendant to track “future web browsing activity across the internet,” is highly offensive); *see also Greenley v. Kochava, Inc.*, 684 F. Supp. 3d 1024, 1047 (S.D. Cal. 2023) (finding the collection and correlation of a vast amount of information without



TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

users' knowledge for tracking purposes "amounts to [an] egregious breach of social norms" for an intrusion upon seclusion claim). Nonetheless, whether Defendant's tracking and disclosure practices are "highly offensive" cannot be resolved at the pleading stage. *See In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d at 606 ("[T]he ultimate question of whether Facebook's tracking and collection practices could highly offend a reasonable individual is an issue that cannot be resolved at the pleading stage."); *see also Gabrielli*, 815 F. Supp. 3d at 868 ("I cannot, at this early stage, conclude as a matter of law that the alleged transmission via stored cookies of [plaintiff's] browsing data, visit history, website interactions, geolocation information, user input data (including search terms), and other types of data is not [ ] highly offensive").

Again, the cases put forth by Defendant in opposition[8] are inapposite because they do not involve false promises that users would not be tracked in specific ways. *See D'Antonio v. Smith & Wesson Inc.*, 820 F. Supp. 3d 928, 935 (N.D. Cal. 2026) (distinguishing *Hammerling* and *In re iPhone Application Litig.* for this reason). Indeed, in *D'Antonio*, the court held that the defendant's misrepresentations concerning plaintiffs' ability to control what information was shared amounted to a "deceit plus factor" necessary to support plaintiffs' claim of a highly offensive intrusion. *Id.* Accordingly, should the Court determine the "highly offensive" element at this stage of the proceedings (it need not), Defendant's deception, coupled with the degree and extent of the tracking here (*see* Sec. I), amounts to a "highly offensive" intrusion.

**D. Plaintiffs Sufficiently Plead Their Wiretap Claims**

CIPA § 631 imposes liability on any person who, "by means of any machine, instrument, contrivance, or in any other manner," (1) intentionally taps a wire, line, cable, or instrument; (2) willfully attempts to read or learn the contents or meaning of any communication while in transit; (3) uses or attempts to use any information so obtained; or (4) aids, agrees with, employs, or

[8] *Hammerling v. Google LLC*, 615 F. Supp. 3d 1069, 1090 (N.D. Cal. 2022) (finding no highly offensive disclosure because Google's data collection was "not blatantly deceitful"); *In re iPhone Application Litig.*, 844 F. Supp. 2d 1040, 1063 (N.D. Cal. 2012) (similar).



TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

conspires with any person to unlawfully do, or cause to be done, any of the acts mentioned in the section. Cal. Penal Code § 631(a). Here, Defendant's conduct implicates the latter three. *See* Compl. ¶¶ 75, 82, 83, 104, 132, 191-193, 242.

Similarly, the Federal Wiretap Act requires a showing that Defendant (1) intentionally (2) intercepted, endeavored to intercept, or procured another person to intercept or endeavor to intercept (3) the contents of (4) an electronic communication (5) using a device. § 2511. Funko's violation of § 2511 is twofold: (i) Funko procured the Tracking Tools on the Website to intercept user communications, and (ii) Funko subsequently used the intercepted communications for marketing and analytics. *Id.* at ¶¶ 75, 82, 83, 104, 132, 166, 167, 242. Each of Defendant's four arguments to the contrary fails.

**1. Plaintiffs Plead an Unlawful Interception; The Crime Tort Exception Applies**

Defendant invokes the Federal Wiretap Act's "party defense" (*see* Mot. at 21–22), arguing that it cannot eavesdrop on its own conversations, but the "party defense" does not shield Defendant from liability here. *First*, the party defense protects only direct interceptors, not procurers. *See Mekhail v. N. Mem'l Health Care,* 726 F. Supp. 3d 916, 925-26 (D. Minn. 2024) ("[A]n interceptor and the procurer/user of an interception are conceptually and legally distinct" and "the statute's plain language appears to support the interpretation that the party exception was drafted with active interceptors foremost in mind"); *see also Q.J. v. Powerschool Holdings, LLC*, No. 23 C 5689, 2025 WL 2410472, at *11 n.3 (N.D. Ill. Aug. 20, 2025) (noting that it is an open questions as to whether § 2511(2)(d)'s statutory language protects procurers). Here, Plaintiffs distinguish Defendant's role as a procurer from that of a direct interceptor. *See* Compl. ¶¶ 9, 117, 191.

*Second*, even if the Court were to find the "party defense" applicable, the statute's crime-tort exception still carves out a path to pursue Plaintiff's claim under § 2511(2)(d). Defendant's premise that the Tracking Entities' commercial motives negate any tortious or criminal purpose was very recently rejected by several courts in this Circuit. *See Asercion v. Ulta Salon, Cosmetics*



TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

*& Fragrance, Inc.,* No. 26-CV-02442-RFL, 2026 WL 2453175, at *3 (N.D. Cal. Aug. 21, 2026) ("the crime-tort exception applies because [p]laintiff sufficiently alleges that Ulta intended to collect information and distribute it to third parties for targeted advertising, which is an independent tortious purpose beyond the act of interception itself, and as discussed above, it allegedly violated the CIPA in doing so."); *In Re Otter.AI Privacy Litigation,* No. 25-cv-06911-EKL, 2026 WL 2351237, at *5 (N.D. Cal. Aug. 13, 2026) (crime-tort exception applies because defendant tortiously used plaintiffs' data, without their knowledge or consent, to train its "machine learning systems for its own pecuniary gain"); *Allison v. PHH Mortg.*, No. 25-CV-05323-RFL, 2026 WL 899438, at *11 (N.D. Cal. Mar. 27, 2026) (crime-tort exception applies where defendant installed trackers on its website to track customers' sensitive information to reduce the cost of marketing).

Furthermore, the crime-tort exception also applies because Plaintiffs pled an invasion of privacy claim through the disclosure of their information to the Tracking Entities. *See R.C. v. Walgreen Co.,* 733 F. Supp. 3d 876, 901–02 (C.D. Cal. 2024) (crime-tort exception applies where plaintiffs plead an invasion of privacy claim); *see also Dellasala,* 2026 WL 1138358, at *10 (similar); *Garcia v. Truist Fin. Corp.*, 825 F. Supp. 3d 1149, 1166 (C.D. Cal. 2026) (similar).[9]

**2. Plaintiffs Allege "In Transit" Interception**

Plaintiffs' allegations clearly establish that the interception of their "content" occurred contemporaneously, or "in transit"—not while in "electronic storage" (Mot. at 23). *See* Compl. ¶ 112 ("The Tracking Tools intercepted the contents of Plaintiffs' communications contemporaneously with Plaintiffs' interactions with the Website."); *see also* ¶ 113 ("This interception, duplication, and transmission occurred inside Plaintiffs' browsers, before the communications fully reached users' devices, or otherwise before the communications were

[9] For purposes of the crime-tort exception, the subsequent use of Plaintiffs' Sensitive Information in violation of the third clause of CIPA § 631(a) constitutes a distinct criminal and tortious act from the initial interception. *See Smart v. Main Line Health*, No. 22-5239, 2026 WL 1008171, at *2-3 (E.D. Pa. Apr. 14, 2026).



TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

transmitted from users' devices, and therefore occurred while the communications were in transit.") (emphasis added). Such allegations are sufficient on a motion to dismiss. *See Asercion*, 2026 WL 2453175, at *1 ("in transit" satisfied where plaintiff alleges that the trackers collected and transmitted browser activity "in real time"); *Limas v. Wayfair LLC, et al.,* No. CV 25-11185-DMG (Ex), 2026 WL 2351592, at *4 (C.D. Cal. Aug. 13, 2026) ("Allegations showing that duplicates of communications were simultaneously transmitted in real-time adequately demonstrate that messages were intercepted while 'in transit.'"); *Heerde v. Learfield Commc'ns, LLC*, 741 F. Supp. 3d 849, 862 (C.D. Cal. 2024) (advancing CIPA § 631 claim where "plaintiffs allege that, after they entered their [s]earch [t]erms, the [s]earch [t]erms were replicated and sent in parallel to the tracking entities").

Defendant's argument on this point raises fact-intensive questions inappropriate for resolution on a motion to dismiss. *See D'Angelo v. Penny Opco, LLC*, No. 23-CV-0981-BAS-DDL, 2023 WL 7006793, at *8 (S.D. Cal. Oct. 24, 2023) ("a pleading standard to the contrary would require the CIPA plaintiff to engage in a one-sided guessing game because the relevant information about data capture typically resides uniquely in the custody and control of the CIPA defendant and its third-party recorder").

In any event, Defendant's argument fails on its face because it relies on case law inapposite to the facts and allegations here. For example, the twelve-year-old decision in *NovelPoster v. Javitch Canfield Group* dealt with emails "that ha[d] already been received in an email account's inbox," not the mid-communication interception of a user's interactions with a website. 140 F. Supp. 3d 938, 951–52 (N.D. Cal. 2014). *Mintz v. Mark Bartelstein & Assocs.*, 906 F. Supp. 2d 1017, 1031 (C.D. Cal. 2012) is distinguishable on similar grounds. Accordingly, there is no reason for this Court, at this stage of the proceedings, to find that the interception of Plaintiffs' communications with the Website was not "in transit."



TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

### 3. There Can Be Civil Liability for Allegedly Procuring or Aiding and Abetting an Alleged Interception Through Third Parties

Plaintiffs' Federal Wiretap Act claim is premised on two independent types of conduct, either sufficient to sustain the claim: ***procurement*** of the interception and ***use*** of the intercepted information. *See* Sec. IV intro, *supra*; *see also Boseovski v. McCloud Healthcare Clinic, Inc.*, No. 2:16-CV-2491-DMC, 2020 WL 68578, at *6 (E.D. Cal. Jan. 7, 2020) (procurement); *Smith v. Rack Room Shoes, Inc.*, No. 24-cv-06709-RFL, 2025 WL 2210002, at 4 (N.D. Cal. Aug. 4, 2025) (finding Plaintiff adequately alleged use of intercepted communications). Defendant's argument for dismissal is premised solely on "procurement," not "use," and its contention that Section 2520(a) does not create a private civil cause of action for "procuring, enabling, aiding or abetting another's interception of such" (Mot. at 23–24) is therefore not dispositive.

Even putting "use" aside, Defendant's position on "procurement" represents the minority view on this issue. Indeed, Defendant relies on the decision in *In re Blue Shield of California Privacy Litig.*, No. 4:25-cv-03209-YGR, 2026 WL 2040561, at 10 (N.D. Cal. July 10, 2026), for this contention, but the court there relied heavily on the Fifth Circuit's decision in *Peavy v. WFAA-TV, Inc.*, 221 F.3d 158, 168 (5th Cir. 2000)—a decision frequently rejected by courts in this Circuit and across the country. *See Boseovski,* 2020 WL 68578, at *6 (rejecting *Peavy* and finding liability for procurement); *Lonegan v. Hasty*, 436 F. Supp. 2d 419, 428 (E.D.N.Y. 2006) (same); *Dawson v. Univ. of Phx., Inc.*, No. 1:25-cv-03497, 2026 WL 92248, at *14 (N.D. Ill. Jan. 13, 2026) (same); *Valentine v. Wideopen West Fin., LLC,* 288 F.R.D. 407, 411 n.3 (N.D. Ill. 2012) (rejecting *Peavy* and distinguishing aiding-and-abetting liability, which is secondary, from procurement liability, which is direct).

Moreover, Defendant intentionally frames its argument on this point around the Federal Wiretap claim but ignores Plaintiffs' CIPA § 631 claims, which clearly recognize aiding-and-abetting liability. *See* § 631(a); *see also Balestrieri v. SportsEdTV, Inc.*, No. 25-cv-04046-SK, 2025 WL 2776356, at *11 (N.D. Cal. Sept. 16, 2025) (finding a violation of § 631(a) where



TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

defendant knowingly installed third-party tracking software on its website); *see also Correia*, 2026 WL 2343093, at 5–6 (same, even without intent); *Doe v. Tenet Healthcare Corp.,* 789 F. Supp. 3d 814, 839–40 (E.D. Cal. 2025) (same).

**4. Plaintiffs Plead Interception of Contents**

Plaintiffs clearly allege that the Tracking Tools intercept the "contents" of their communications with the Website, and Defendant once again ignores the allegations in the Complaint. Specifically, Plaintiffs allege that the Tracking Tools intercepted detailed URLs specific to Plaintiffs' searches, purchases, and browsing. *See* Compl. ¶¶ 6, 19-21, 66, 74, 91. These are the "contents" of the communication, and courts in this circuit have recognized as much. *Asercion*, 2026 WL 2453175, at *1 (product views constitute contents of a communication); *Limas*, WL 2351592, at *3 ("URLs which include[ ] the exact subpage of precise items being purchased me[e]t the definition of 'contents,' since these full-string detailed URLs could 'divulge a user's personal interests, queries, and habits[.]'") (quoting *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d at 605); *see also Gabrielli*, 815 F. Supp. 3d at 871 (user input data, such as search queries, search terms, and descriptive URLs, are "contents").[10] Additionally, at this stage of the proceedings, there is no requirement that Plaintiff allege "what specific queries Plaintiff himself inputted on the Website and what content was returned as a result." *Limas*, 2026 WL 2351592, at *3; *accord Krzyzek v. Openx Techs., Inc.,* 817 F. Supp. 3d 857, 867 (N.D. Cal. 2026) (rejecting defendant's argument that plaintiffs had to allege "which specific URLs" they visited).

---

[10] In *Gabrielli*, the Court distinguished *Mikulsky v. Bloomingdale's, LLC*, 713 F. Supp. 3d 833, 845 (S.D. Cal. 2024), which Defendant cites in support (*see* Mot. at 16), holding that the information provided by plaintiff, like Plaintiffs' information here, amounts to "[w]ebsite user's affirmative decisions, actions, choices [and] preferences such as search queries, the user's name, age, gender, email address, location, and/or payment information"—distinguishable from the "button clicks, mouse movements, scrolling…page navigation" found to constitute only "record" information in *Mikulsky*. 815 F. Supp. 3d at 871.



TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

**E. Plaintiffs Adequately Plead A Claim Under CIPA § 638.51**

Plaintiffs allege that the Tracking Tools capture IP addresses, detailed URLs, cookies, and Pixel IDs that record the addressing information from electronic communications and identify the source and destination of signals coming to and from Plaintiffs' devices. *See* Compl. ¶¶ 92, 123, 124. Courts in the Ninth Circuit increasingly reject Defendant's argument that Plaintiffs "cannot simultaneously allege interception of content to support their Section 631 claims, while recharacterizing the same conduct as non-content signaling to support Section 638.51." (Mot. at 26). *See Limas,* 2026 WL 2351592, at *8) ("Even if [ CIPA 631 and CIPA 638] are not pled in the alternative, the [c]ourt is not convinced that the pleading of a section 631(a) claim automatically necessitates dismissal of a section 638.51 claim."); *Gabriell,* 815 F. Supp. 3d at 872 ("[G]iven CIPA's purpose to protect Californians' privacy, it seems very unlikely that the state Legislature meant to permit the installation and implementation of pen registers 'so long as those devices also record the contents of third party's communications.'"); *Vishal Shah v. Fandom, Inc.*, 754 F. Supp. 3d 924, 932 (N.D. Cal. 2024) (similar). This is because "[s]uch a loophole would allow any website operator to escape liability for trap and trace devices, or pen registers, by employing a more intrusive form of technology." *Limas*, 2026 WL 2351592, at *8.

Defendant's ancillary argument that Section 638.51 does not apply to website technologies like cookies and pixels is without merit and has been widely rejected. *See, e.g.*, *Greenley,* 684 F. Supp. 3d at 1050; *Gabrielli,* 815 F. Supp. 3d at 871; *Vishal Shah*, 754 F. Supp. 3d at 928. Accordingly, Plaintiffs' Section § 638.51 claim should proceed.

**F. Plaintiffs Have Stated A Claim For Common Law Fraud**

To prevail on a common law claim of fraud, the plaintiff must establish each of the following elements: "(1) representation of an existing fact; (2) materiality; (3) falsity; (4) the speaker's knowledge of its falsity; (5) intent of the speaker that it should be acted upon by the plaintiff; (6) plaintiff's ignorance of its falsity; (7) plaintiff's reliance on the trust of the representation; (8) plaintiff's right to rely upon it; and (9) damages suffered by the plaintiff. *See*



TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

*Alexander v. Sanford,* 181 Wn. App. 135, 179 (Wash. App. 2014).[11] Simplified, this means pleading "the who, what, when, where, and how" of the alleged fraud. *Vess*, 317 F.3d at 1106 (to satisfy Fed. R. Civ. P. 9(b)).

Here, the "who" is Defendant. *See*, *e.g.*, Compl. ¶¶ 2-3, 22, 42, 229-239. The "what" is Defendant's Cookie Banner and Cookie Settings, which falsely represented that users could disable non-essential cookies and prevent third-party tracking. *Id.* ¶¶ 4-5, 7-10, 49-55, 229-232. The "when" is each respective visit to the Website in March of 2026 and April of 2025. *Id.* ¶¶ 19-21. The "where" is Defendant's Website. *Id.* ¶¶ 3-6. The "how" is the Tracking Tools' continued operation, and Defendant's continued facilitation of the same, after Plaintiffs' affirmative rejection of consent to the sale/sharing of their Sensitive Information. *Id.* ¶¶ 7-10, 57, 58, 229-239. Several recent California cases examining cookie settings fraud have refused to dismiss fraud claims premised on violations identical to those here. *See Gabrielli*, 815 F. Supp. 3d at 873; *Pemberton*, 2025 WL 3268404, at *21.

### G. Plaintiffs Have Stated Claims Under the UCL and CLRA

The UCL provides a cause of action for business practices that are unlawful, unfair, or fraudulent. *See* Cal. Bus. & Prof. Code § 17200. "Unlawful acts are anything that can properly be called a business practice and that at the same time is forbidden by law." *Stark v. Patreon*, *Inc.*, 635 F. Supp. 3d 841, 854 (N.D. Cal. 2022). Similarly, the CLRA "broadly prohibits 'unfair methods of competition and unfair or deceptive acts or practices.'" *Thornton v. Micro-Star Int'l Co.*, No. 2:17-cv-03231-CAS-AFMx, 2018 WL 5291925, at *5 (C.D. Cal. Oct. 23, 2018) (quoting Cal. Civ. Code § 1770). Here, Plaintiffs' UCL and CLRA claims are properly based on Defendant's misrepresentations and unlawful conduct. *See* Compl. ¶¶ 209-15, 218-25 (alleging deceptive acts/practices, unlawful conduct).

---

[11] These mirror the elements to plead common-law fraud in California. *See Bower v. AT&T Mobility, LLC*, 196 Cal. App. 4th 1545, 1557 (Cal. App. 2011).



TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

**1. UCL**

Plaintiffs' claims are unlawful under the UCL because Defendant violated other laws. *See* ¶ 218 (Defendant violated the CLRA); ¶¶ 219–20 (the Federal Wiretap Act & CIPA); *see also Cappello v. Walmart Inc.*, 394 F. Supp. 3d 1015, 1023 (N.D. Cal. 2019) ("By alleging that Walmart shared [p]laintiffs' and class members' video media purchase information with Facebook for direct marketing, [p]laintiffs adequately pleaded a violation of Section 22576, which is sufficient to state a UCL claim under the unlawful prong."); *In re Zoom Video Communs. Inc. Privacy Litig.*, 525 F. Supp. 3d 1017, 1047 (N.D. Cal. 2021) (allowing plaintiff to maintain its UCL claim under the unlawful prong where "a predicate violation of law supports [p]laintiffs' claim"); *Edwards v. Mubi, Inc.*, 773 F. Supp. 3d 868, 886 (N.D. Cal. 2025) (same).

Defendant's argument that "Plaintiffs have not shown that they 'lost money or property' because of Funko's conduct" (Mot. at 31) is not dispositive. UCL standing is satisfied where a plaintiff (1) surrenders in a transaction more, or acquires in a transaction less, than he or she otherwise would have; (2) has a present or future property interest diminished; (3) is deprived of money or property to which he or she has a cognizable claim; or (4) is required to enter into a transaction, costing money or property, that would otherwise have been unnecessary. *In re TikTok, Inc., Minor Priv. Litig.,* No. MDL 3144-GW-RAOX, 2025 WL 3628598, at *18 (C.D. Cal. Nov. 5, 2025), *adopted sub nom. In re TikTok, Inc., Minor Priv. Litig.,* No. MDL 3144-GW-RAOX, 2025 WL 3628448 (C.D. Cal. Nov. 6, 2025).

Here, Plaintiffs allege that Funko intercepted and disclosed Plaintiffs' valuable personal information. *See* Compl. ¶¶ 48, 226, 238. Courts have advanced UCL claims brought under similar allegations. *See In re TikTok, Inc., Minor Priv. Litig.,* 2025 WL 3628598, at * 20 (finding UCL standing where personal information, which has value both to its owner and in the marketplace, was shared or disseminated without the user's permission); *see also In re Meta Pixel Tax Filing Cases*, 724 F. Supp. 3d 987, 1024 (N.D. Cal. 2024) (holding that any time a user



TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

transacts with a business and the user's expectations regarding the user's personal data are not met as a result of conduct alleged to violate the UCL, the user can establish standing).[12]

**2. CLRA**

Plaintiff Beltran's CLRA claim[13] is properly grounded in Defendant's misrepresentations contained in its Cookie Banner, Cookie Settings, and subsequent conduct. For the same reasons Plaintiffs sufficiently plead their fraud claim, Beltran sufficiently pleads his CLRA claim. *See Thornton*, 2018 WL 5291925, at *5 (holding that a CLRA claim grounded in fraud is subject to Rule 9(b)'s heightened pleading requirements); *see also supra* Sec. V (establishing fraud claim). Moreover, noncompliance with the CLRA's notice requirements is not fatal to Plaintiff's claim. *See Oh v. Catalina Snacks, Inc.*, 764 F. Supp. 3d 903 (C.D. Cal. 2025) (refusing to dismiss plaintiffs' CLRA claims with prejudice and allowing plaintiffs to cure on amendment); *see also Doe 1 v. AOL, LLC*, 719 F. Supp. 2d 1102 (N.D. Cal. 2010) (same).

**H. Plaintiffs Adequately Plead Unjust Enrichment**

Under Washington law, an unjust enrichment claim requires three elements: "[a] benefit conferred upon the defendant by the plaintiff; an appreciation or knowledge by the defendant of the benefit; and the acceptance or retention by the defendant of the benefit under such circumstances as to make it inequitable for the defendant to retain the benefit without the payment of its value." *Young v. Young*, 164 Wn.2d 477, 484 (2008).

Here, Plaintiffs have alleged that they conferred upon the Defendant the benefit of their personal information (Compl. ¶¶ 6, 28-30, 59-61), Defendant knowingly used that information for its own marketing and analytics (Compl. ¶¶ 67-70,75, 76, 94), and that because Plaintiffs did not consent to the use of their information, it would be unjust for Defendant to retain the benefit

---

[12] *Doe v. Eating Recovery Ctr. LLC*, No. 23-CV-05561-VC, 2024 WL 2852210, at *1 (N.D. Cal. June 4, 2024) is distinguishable, as this case turned on pleading deficiencies. Moreover, because the UCL imposes the stricter standing threshold, a plaintiff who satisfies UCL standing will, *a fortiori*, have suffered "any damage" sufficient to establish CLRA standing as well. *B.K. v. Desert Care Network*, No. 2:23-cv-05021 SPG (PDx), 2024 WL 1343305, at *7 (C.D. Cal. Feb. 1, 2024).

[13] Plaintiffs agree that the CLRA claim only applies to Plaintiff Beltran.



TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

without payment (Compl. ¶¶ 19-21, 58, 132, 133, 244). Courts in this Circuit have permitted unjust enrichment claims where a plaintiff alleges an entitlement to defendant's profits derived from users' personal data. *See Castillo,* 2024 WL 4785136 at *16*; In re Facebook Inc. Internet Tracking Litig.*, 956 F.3d at 600; *Pemberton*, 2025 WL 3268404, at *23-25; *Gabrielli*, 815 F. Supp. 3d at 875. This case is no different, and Plaintiffs' allegations that Defendant benefited financially by selling and/or sharing their Sensitive Information without consent are sufficient to establish unjust enrichment.

## V. CONCLUSION

For the foregoing reasons, Defendant's Motion should be denied. Should the Court grant Defendant's Motion, Plaintiffs respectfully request leave to amend. *See Roney v. Miller*, 705 F. Appx. 670, 671 (9th Cir. 2017) ("a district court should 'freely give leave' to amend a complaint").

//

//

//

//

//

//

//



TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

Dated: August 24, 2026

**TOUSLEY BRAIN STEPHENS PLLC**

By: */s/ Kim D. Stephens, P.S.*
By: */s/ Rebecca L. Solomon*
Kim D. Stephens, P.S., WSBA #11984
kstephens@tousley.com
Rebecca L. Solomon, WSBA #51520
rsolomon@tousley.com
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
Telephone: (206) 682.5600
Facsimile: (206) 682.2992

By: */s/ Christopher V. DeVivo*
Christopher V. DeVivo*
cdevivo@zlk.com
Mark S. Reich*
mreich@zlk.com
**LEVI & KORSINSKY, LLP**
33 Whitehall Street, 27th Floor
New York, NY 10004
Telephone: (212) 363.7500
Facsimile: (212) 363.7171

*Attorneys for Plaintiffs and the Proposed Class*

*admitted *pro hac vice*

I certify that this brief contains 6,325 words, in compliance with the Local Civil Rules.